Spear v. Tinkham.

---

### SPEAR, executor, &c. vs. TINKHAM and others.

Where an executor mixes up the trust funds with his own, or neglects to keep regular accounts of the investments, and of the interest received upon such funds from time to time, he is chargeable with interest as if the fund had been kept invested upon interest, payable periodically, and as if the payments had been made by him from the interest and principal thus received, and in hand, when the payments from the trust fund were made by him. And interest should not be computed upon the capital fund for a term of years, with a deduction of the payments, and interest on such payments in the meantime.

As a general rule, where there is a bequest of the whole of the testator's personal estate, or of the residue thereof after payment of debts and legacies, to one person for life, with a remainder to others after the termination of such life estate therein, the whole must be converted into money and invested in permanent securities by the executor, and the income paid over to the person entitled to the life estate.

The rule is the same where a residuary bequest for life, or for a limited term, em-

braces articles not necessarily consumed in the using—such as furniture, books, plate, &c. and also property which must be so consumed; unless the will indicates an intention, on the part of the testator, that the legatee for life shall enjoy the property, or some particular part thereof, in its then state, as a specific bequest. Whenever specific articles, not necessarily consumed in using, are bequeathed to a legatee for life, with a limitation over, and without any direction to the executor to hold them in trust for the remainder-man, the executor is authorized to deliver the same to the person entitled to a life estate therein; taking from such person an inventory and receipt, specifying that such articles only belong to the first taker for life, and that afterwards they are to be delivered to the legatee who is entitled to them in remainder.

THIS was an appeal from the sentence and decree of the surrogate of Ontario county, upon the final settlement of the account of the appellant, as the executor of J. Tinkham, deceased. The testator died in 1822, leaving his wife and three children surviving him. By his will he bequeathed to his widow the use and occupation of his personal property; and directed that the Baptist Church in Palmyra should have the guardianship and control of such use, for her benefit. And after the decease of the widow, he gave the property to his son and two daughters. The estate of the testator, after payment of his debts and the expenses of administration, amounted to about $600. By the direction of the church the executor delivered to the widow, shortly after the death of the testator, about $100, of the property mentioned in the inventory, and $10,76 in money. The residue, the executor converted into money, and for a time kept it separate from his own funds, but finally mixed and loaned it out with his own moneys, indiscriminately. The widow died in May, 1841, and between the death of the testator and that time, the executor paid out of the estate to the widow, or for her support, about $800. The surrogate allowed to the executor full commissions upon the amount of the inventory; and also five per cent upon all the payments made to the widow, as an extra compensation for his services. He also allowed him for all the payments made to the widow, or for her support; although they considerably exceeded the whole interest upon the value of the property, in the hands of the executor, in which she had a life estate. And he stated the account by charging the executor from time to time with interest upon the

balances in his hands, after one year from the death of the testator,. and crediting him with the payments, so as to apply such payments first to the satisfaction of the interest then accrued, and the residue towards the reduction of the capital of the estate in his hands. In this mode. of stating the account, a balance was found in the hands of the executor, in Feb. 1845, of $194,14. Out of this sum the executor was allowed, for costs and expenses, and for surrogate's fees, &c. $45,67. And the balance he was decreed to pay to the three children of the testator equally, with interest after the 20th of March, 1845. But the executor was allowed to retain out of the amount payable to each of the legatees, a commission of five per cent. The executor appealed from the whole decree; and the respondents having neglected to appear and answer the petition of appeal, the case was heard ex parte as against them.

*T. R. Strong,* for the appellant.

THE CHANCELLOR. The surrogate adopted the legal mode in computing the interest, in this case, if any interest account was proper in settling the account between the executors and those who were entitled to the personal property after the death of the widow. Where an executor mixes up the trust funds with his own, or neglects to keep regular accounts of the investments and interest received upon such funds from time to time, there is no other way in which justice can be done to the cestuis que trust, than to charge him with interest as if the fund had been kept invested upon interest, payable periodically, and as if the payments had been made, by him, from the interest and principal thus received and in hand when the several payments from the trust fund were made by him. And interest should not be computed upon the capital fund, for a term of years, with a deduction of the payments, and interest on such payments, as claimed in the schedules presented to the surrogate in this case. Considering the will, therefore, as giving to the children of the testator only so much of the personal estate as might not be wanted for the use and support of the widow the

decree of the surrogate is less favorable to the respondents than it should have been. For the surrogate has, in effect, allowed the executor ten per cent commissions upon all the capital of the estate of the decedent which was not delivered over to the widow in the first place; and five per cent upon the part thus delivered to her, and upon the interest subsequently received. And there are some other errors in favor of the respondents.

The surrogate was wrong, however, in the construction of the will, if he has correctly stated its contents in his return. And instead of allowing to the executor any payments made to or on account of the widow, out of the capital of the estate, he should have charged him with the whole capital in his hands, exclusive of the specific articles of personal property, which would not be consumed in the using, delivered to her soon after the death of the testator. There is nothing in the will, as set out, from which it can be inferred that the testator intended to give to his widow any part of the capital of his personal estate. He gave to her merely the *use* and *occupation* thereof for life ; expressly bequeathing it to his three children after her death. The placing of the guardianship and control of such use in the trustees of the church, if it was not absolutely void as a trust, could not enlarge her life estate in the property. It was, at most, constituting the church, in its corporate capacity, a trustee of her interest in the testator's estate.

As a general rule, where there is a bequest of the whole of the testator's personal estate, or of the residue thereof after payment of debts and legacies, to one person for life, with a remainder over to others after the termination of such life estate therein, the whole must be converted into money, and invested in permanent securities, by the executor, and the income paid over to the person entitled to the life estate. (*How* v. *Earl of Portsmouth*, 7 *Ves.* 137. *Fearns* v. *Young*, 9 *Idem*, 549. *Shuler* v. *Covenhoven*, 2 *Paige's Rep.* 122.) The rule is the same where the residuary bequest for life, or for a limited term, embraces articles not necessarily consumed in the using ; such as furniture, books, plate, &c., as well as property which must be so consumed ; unless the will contains indications of an inte

tion, on the part of the testator, that the legatee for life should enjoy the property, or some particular parts thereof, in its then state, as a specific bequest for life. (*Mills* v. *Mills*, 7 *Sim. Rep.* 501. *Randall* v. *Randall*, 3 *Mer. Rep.* 193. *Collins* v. *Collins,* 2 *Myl. & Keen,* 703. *Alcock* v. *Sloper, Idem,* 699. *Bethune* v. *Kinedy,* 1 *Myl. & Craig,* 114. *Pickering* v. *Pickering,* 4 *Idem,* 289.) Wherever specific articles, not necessarily consumed in using, are bequeathed to a legatee for life, with a limitation over, and without any direction to the executor to hold them in trust for the remainder-man, the executor is authorized to deliver the same to the person entitled to a life estate therein; taking from such person an inventory and receipt stating that such articles only belong to the first taker, for life, and that afterwards they are to be delivered to the legatee who is entitled to them in remainder. (*Leake* v. *Bennet,* 1 *West's Ch. Rep.* 284. *Bill* v. *Kinaston,* 2 *Atk.* 82. *Foley* v. *Burnell,* 1 *Bro. C. C.* 279.)

The precise language of the will is not given in the surrogate's return, in this case, nor does the return state what was the nature of the property that was delivered to the widow soon after the testator's death. Perhaps, therefore, the executor may have been authorized to deliver to her that part of the property, except the $10,76 in money, to be kept by her for life, and to be received from her by the children at her death. But even if the executor was not answerable to the children for that part of the capital of the personal property, he was bound to keep the capital of the residue of the estate properly invested, for the use of the testator's son and daughters after the death of the widow. And the interest or income alone of that part of the estate should have been paid to the widow, or paid out for her support, according to the true construction of the will, so far as an opinion of its terms can be formed from the return of the surrogate. If the respondents had appealed from the sentence and decree of the surrogate, therefore, I should, upon this return, have been bound to charge the executor, for the capital of the fund belonging to them, and interest thereon after the death of the widow, with an amount three or four times as large as the

executor has been charged therefor, by the surrogate. The present appellant then has no ground to complain of the decree.

The sentence and decree appealed from is therefore affirmed; and the proceedings are to be remitted to the surrogate.